UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EMMA G.,

           Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                            20-CV-613S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.        Plaintiff Emma G.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since December 16, 2016, due to mental and physical conditions, mostly involving her back and upper extremities. Plaintiff maintains that she is entitled to disability benefits because her impairments render her unable to work.

        2.        Plaintiff filed an application for disability benefits on January 21, 2017. After denial at the agency level, Plaintiff proceeded to a hearing, which took place before ALJ Brian LeCours on October 12, 2018. At the time of the hearing, Plaintiff was 36 years old, with at least a high school education (Bachelor's degree), and had past relevant work as a cashier/checker and circulation clerk. The ALJ considered the case *de novo* and, on January 9, 2019, issued a written decision denying Plaintiff's application for benefits. The Appeals Council thereafter denied Plaintiff's request for review on March 23, 2020.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

1

3. Plaintiff filed the current action on May 25, 2020, challenging the Commissioner's final decision.[2]  The Clerk of Court assigned the case here on April 5, 2021.  (Docket No. 20.)  After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on June 2, 2021, at which time this Court took the motions under advisement without oral argument.  (Docket Nos. 11, 19, 22, 25.)  For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted).  In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405 (g).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405 (g); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence.  See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does

---

[2] The ALJ's January 9, 2019 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6. As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d

842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 405 (g), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.  See Zacharopoulos v. Saul, CV 19-5075 (GRB), 2021 WL 235630, at *7 (E.D.N.Y. Jan. 25, 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).  This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to

4

more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.     The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12.     In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since December 16, 2016, the alleged onset date (R. at 17);[3] (2) Plaintiff's degenerative disc disease of the lumbar spine, sacroiliitis, and right shoulder impairment are severe impairments within the meaning of the Act (R. at 18-19); (3) Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 19-20); (4) Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567 (b) except she can only frequently balance, stoop, kneel, crouch, or crawl, and only occasionally crawl and climb ramps, stairs, ladders, ropes or scaffolds (R. at 20-23); (5) Plaintiff could perform her past relevant work as a cashier/checker and circulation clerk (R. at 23-24); and, alternatively, (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 24-25).  Accordingly, the ALJ determined that

---

[3] Citations to the underlying administrative record are designated as "R."

Plaintiff was not under a disability as defined by the Act from December 16, 2016, through January 9, 2019, the date of the decision. (R. at 15, 25.)

13. Plaintiff challenges the ALJ's RFC determination and his consideration of the medical opinion evidence. Plaintiff first argues that the ALJ erred by not including an RFC limitation to account for her right shoulder impairment. Second, Plaintiff argues that the ALJ failed to properly evaluate the opinions of David Brauer, M.D., and Jennifer Earsing, N.P. Third, Plaintiff contends that the ALJ relied on stale evidence. In response, the Commissioner argues that the ALJ's decision is supported by substantial evidence and free from legal error and should therefore be affirmed. This Court agrees with the Commissioner.

14. Plaintiff argues that the ALJ erred by not including an RFC limitation for her right shoulder impairment, which the ALJ found to be severe at Step 2. The record reflects that the ALJ considered Plaintiff's right shoulder impairment as follows:

> With respect to her upper extremities, the claimant underwent a right shoulder arthroscopy with subacromial decompression and distal clavicle excision in April 2015. She had no complications healing following this surgery although she had an exacerbation of shoulder pain after swimming in August 2015. She has not exhibited any on-going right shoulder abnormalities during physical examinations since her alleged onset date and has not engaged in any on-going specialized care for her shoulder impairment since her alleged onset date. As noted below, the claimant has reported that she is able to perform many tasks involving her upper extremities, including driving, cooking, cleaning, folding laundry, coloring, texting, and maintaining an online business.

(R. at 25 (internal record citations omitted).)

15. Plaintiff concedes that her right shoulder impairment was asymptomatic post-surgery and on the alleged onset date, but argues that she began suffering shoulder

7

pain in April 2018 after she "cracked" her shoulder, as reflected in Nurse Practitioner Earsing's notes and her own testimony (R. at 47, 584-85). See Reply Memorandum of Law, Docket No. 25, p. 3. This self-report, argues Plaintiff, warranted an RFC limitation in reaching and handling to account for her "exacerbated" right shoulder injury. Id. Such is not the case.

16.    To begin, the fact that the ALJ found Plaintiff's right shoulder impairment severe at Step 2 does not necessarily mean that the condition warrants a limitation in the RFC. See McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.") (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)).

17.    Moreover, there is no medical evidence in the record—and Plaintiff points to none—indicating that Plaintiff's shoulder condition resulted in any reduced functionality. Nurse Practitioner Earsing, for example, found no physical function impairments in reaching, handling, fingering, feeling, or pushing/pulling in August 2018, just four months after Plaintiff reported pain from the "cracking" in her shoulder. (R. at 580.) And the ALJ found that Plaintiff's subjective complaints, including complaints of right shoulder pain, which he explored at the hearing (R. at 46-48), were inconsistent with the medical evidence, treatment notes, and Plaintiff's activities of daily living, which further weakens this argument. (R. at 24.) In sum, Plaintiff failed to demonstrate that her right shoulder condition caused any functional limitations, and this Court therefore finds no error. Richard B. v. Comm'r of Soc. Sec., 1:19-CV-579 (WBC), 2021 WL 22504, at *4 (W.D.N.Y.

Jan. 4, 2021) ("Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on the Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.").

18.  Plaintiff's second argument is presented in terms that the ALJ failed to properly evaluate the opinions of David Brauer, M.D., a consultative examiner, and Jennifer Earsing, a treating Nurse Practitioner, using the factors set forth in 20 C.F.R. § 404.1527.  More accurately, Plaintiff challenges the ALJ's weighing of the opinion evidence, arguing that the medical opinions favorable to her are entitled to more weight than the ALJ afforded them, and that the opinions that the ALJ weighed more heavily should have been discounted.  See, e.g., Memorandum of Law, Docket No. 19-1, pp. 15-18 (arguing that the ALJ erred in relying on unfavorable, rather than favorable medical opinions); Reply Memorandum of Law, p. 6 (arguing that "Dr. Brauer's opinion is entitled to significantly more weight than that of State Agency review cardiologist Dr. Ahmed"). These arguments are unpersuasive.

19.  For claims filed before March 27, 2017, such as this one, the Commissioner evaluates medical opinion evidence under the framework set forth in 20 C.F.R. § 404.1527.[4]  Under that framework, the Commissioner is required to evaluate and consider every medical opinion submitted, together with the rest of the relevant evidence.  See 20 C.F.R. § 404.1527 (b) and (c).  To determine what weight to afford a medical opinion, the Commissioner considers the following factors:

> (1) whether the medical source has examined the claimant (with more weight afforded to the opinion of a source who has);

---

[4] For claims filed on or after March 27, 2017, the Commissioner evaluates medical evidence under 20 C.F.R. § 404.1520c.

9

    (2) whether the medical source has a treatment relationship with the claimant (with more, if not controlling, weight afforded to the opinion of a treating source);[5]

    (3) whether the medical source's opinion is supported (with more weight afforded to well explained opinions supported by diagnostic findings and other relevant evidence);

    (4) whether the medical source's opinion is consistent with the record as a whole (with more weight afforded to opinions that are);

    (5) whether the medical source is a specialist (with more weight afforded to the opinion of a specialist in the relevant field than to the opinion of a non-specialist); and

    (6) whether there are other relevant factors informing the medical source's opinion (with more weight afforded to medical sources who understand the social security disability process and its evidentiary requirements or who are familiar with the other information in the claimant's case record).

See 20 C.F.R. § 404.1527 (c)(1)-(6); Smith v. Comm'r of Soc. Sec., 351 F. Supp. 3d 270, 279 (W.D.N.Y. 2018).

    20.    After considering these factors, the Commissioner must adequately explain the weight afforded to the medical opinions. See Falbru v. Berryhill, No. 6:17-CV-6314 (MAT), 2018 WL 1553965, at *2 (W.D.N.Y. Mar. 30, 2018) ("Remand is appropriate where an ALJ fails to consider these factors and to adequately explain the weight given to the consultative examiner's opinion."); Hatcher v. Astrue, 802 F. Supp. 2d 472, 476 (W.D.N.Y. 2011) ("The ALJ must then articulate his reasons for assigning the weight that he does to both treating and nontreating physicians' opinions."). As with other important findings, the Commissioner must explain the weight afforded medical opinions "with sufficient

---

[5] This subsection contains what is commonly known as the treating-physician rule, which is not implicated here since neither Dr. Brauer nor Nurse Practitioner Earsing qualify as treating physicians under the rule.

10

specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris, 728 F.2d at 587.

21. Here, the ALJ canvassed the medical opinion evidence and explained what weight he afforded each opinion. (R. at 22-23.) Plaintiff takes issue with the ALJ affording significant weight to the opinion of state agency consultant Dr. S. Ahmed over those of Dr. Brauer and Nurse Practitioner Earsing. He maintains that the ALJ should not have relied on Dr. Ahmed's opinion because he is a non-examining consultant who specializes in cardiology, not orthopedics or neurosurgery. But "an ALJ is free to give great weight to the opinion of a non-examining medical expert as long as their opinions are supported by substantial evidence." Cruz v. Comm'r of Soc. Sec., No. 16-CV-965, 2018 WL 3628253, at *6 (W.D.N.Y. July 31, 2018); see also Hancock v. Barnhart, 308 F. App'x 520, 521 (2d Cir. 2009). Dr. Ahmed is a state agency consultant familiar with the social security rules and regulations and is thus qualified to render an opinion in this case. Contrary to Plaintiff's argument, there is no requirement that a state agency consultant be a practitioner in a particular field to render a supporting opinion.

22. Plaintiff further argues that Dr. Ahmed based his opinion on an incomplete medical file, but the record reflects that Dr. Ahmed rendered his opinion *after* Dr. Brauer, on whose opinion Plaintiff seeks to rely. Moreover, there is no indication of an incomplete record as there was no significant deterioration in Plaintiff's condition after Dr. Ahmed provided his opinion (as further discussed below).

23. In addition, Plaintiff takes issue with the ALJ's discounting of Nurse Practitioner Earsing's opinion on the basis that she is not an acceptable medical source under the regulations, even suggesting that this was the "primary reason" the ALJ

afforded her opinion no weight. See Memorandum of Law, Docket No. 19-1, p. 17. In fact, however, the ALJ provided multiple reasons for discounting Earsing's opinion, including that it was based solely on Plaintiff's subjective complaints, was inconsistent with objective medical evidence and treatment notes, and was inconsistent with Plaintiff's activities of daily living. (R. at 23.) Moreover, but for Dr. Ahmed, the ALJ identified each medical opinion source as either an acceptable or not acceptable medical source under the guidelines, suggesting that this observation was not the "primary reason" for discounting her opinion. (R. at 22-23.) This Court therefore detects no error.

24. Contrary to Plaintiff's argument, the ALJ's decision reflects his proper consideration and weighing of all the medical evidence, including the medical opinions (R. at 22-23). See Pines v. Comm'r of Soc. Sec., No. 13-cv-6850-AJN-FM, 2015 WL 872105, at *3 (S.D.N.Y. Mar. 2, 2015) ("when reviewing the medical evidence, the ALJ has the authority to select among conflicting opinions"). While Plaintiff undoubtedly would have preferred a weighing of the evidence in her favor, the ALJ adequately explained his consideration of the various medical opinions, and his conclusions are supported by substantial evidence. See Bonet ex rel. T.B., 523 F. App'x at 59 (noting that the issue on review is whether substantial evidence supports the ALJ's decision, not whether it supports Plaintiff's position). Moreover, reliance on a state agency consultant's opinion alone is not reversible error. See Frye ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). Plaintiff's second argument is therefore unpersuasive.

12

25.     Finally, Plaintiff argues that the medical opinions that the ALJ relied on were stale because they predated Plaintiff "cracking" her right shoulder in 2018. Medical opinions, if stale, may not constitute substantial evidence. See Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015) (citing Griffith v. Astrue, No. 08-CV-6004 CJS, 2009 WL 909630, at *9 n.9 (W.D.N.Y. July 27, 2009)). An opinion may be stale if it is based on an incomplete record or does not account for a claimant's deteriorating condition. See Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 469-70 (W.D.N.Y. 2018). But "a medical opinion is not necessarily stale simply based on its age." Id. at 470. An older opinion may thus constitute substantial evidence if it is consistent with the record as a whole. See id.; see also Andrews v. Berryhill, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (finding that ALJ did not err by relying on older opinions where there was no evidence of significant deterioration in the plaintiff's condition); Camille, 104 F. Supp. 3d at 344 (finding that medical opinion was not impermissibly stale because evidence in the record before and after the opinion demonstrated substantially similar limitations and findings). Given the absence of evidence that the "cracking" of Plaintiff's shoulder in 2018 resulted in a material deterioration of her condition (explained above), the medical opinions of record remained relevant and were not rendered stale. Consequently, this argument too is unpersuasive.

26.     Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence. It is therefore affirmed. See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 19) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 22) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:    June 14, 2021
          Buffalo, New York

                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge